PUERTO RICAN LEGAL DEFENSE
AND EDUCATION FUND
Foster Maer (FM -0680)
Alan Levine (AL-5297)
Sandra DelValle (SD-1700)
99 Hudson Street, 14th Floor
New York, New York 10013
Tel. (212) 219-3360

DEWEY BALLANTINE LLP
Janis M. Meyer (JM-3194)
Candace D. Banks (CB-5211)
Lauren C. Petersen (LP-6223)
1301 Avenue of the Americas
New York, New York 10019-6092
212 259-8000

Attorneys for Plaintiffs

**06 CIV. 3243**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Judge McMahon**

|  |  |
|---|---|
| JOHN DOES NOS. 1 THROUGH 6, and NATIONAL DAY LABORERS ORGANIZING NETWORK, | ) ) ) ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| VILLAGE OF MAMARONECK, PHILLIP TRIFILETTI, as Mayor of the Village of Mamaroneck, EDWARD FLYNN, as Chief of Police of the Village of Mamaroneck, | ) ) ) ) |
|  | ) |
| Defendants. | ) |
|  | ) |

_____Civ. _____ (    )

**COMPLAINT**

Plaintiffs John Does No. 1 through 6 and the National Day Laborer Organizing

1

1009717

Network through their undersigned counsel allege as follows:

## PRELIMINARY STATEMENT

1.     The Village of Mamaroneck (the "Village") has embarked on a deliberate and coordinated campaign to harass plaintiffs and other Latino day laborers to deter them from soliciting work in the Village and deprive them of their constitutional and civil rights as provided under United States law.

2.     Since the mid-1980s, day laborers have sought work in and around the Columbus Park area in the Village, a location that is adjacent to the Mamaroneck train station.

3.     At around the time construction commenced on a luxury apartment building on the corner of Van Ranst Place and Sheldrake Place in January 2006, the Village passed a resolution stating that Columbus Park would no longer serve as a day laborer hiring site.

4.     Since then, on weekday and Saturday mornings, Village police officers have targeted the plaintiffs and other Latino day laborers for harassment by establishing checkpoints and conducting police surveillance in and around Columbus Park and along nearby sections of Mamaroneck Avenue, and selectively enforcing traffic ordinances against potential employers.

5.     Police officers follow groups of Latino men around the area on foot, on bicycles and in patrol cars. Police officers have threatened day laborers with $150 fines if they stand still on the sidewalk. In one instance, a police officer held a day laborer in a contractor's truck for two hours without giving any reason for detaining him. In another

2

instance, an officer asked a day laborer "Why don't you go back to your own country?"

6.      The Village has posted signs at various points in Columbus Park that state "This Is No Longer a Day Laborer Pick Up Site."

7.      These actions by the Village and its police officers place an undue burden on the ability of the Latino day laborers to solicit work, and are part of a systematic effort to eject them from public spaces in the Village.

8.      Plaintiffs challenge the Defendants' unreasonable and discriminatory actions towards them and seek injunctive relief and counsel fees and costs, and such other relief as may be necessary to secure for all plaintiffs the right hereafter to be free from unconstitutional and discriminatory treatment on the basis of their race, ethnicity and/or national origin, and from other unconstitutional Village practices.

## JURISDICTION

9.      This suit is brought pursuant to 42 U.S.C. §1983 and §1988 et seq. The jurisdiction of this court is founded upon 28 U.S.C. §1331 and §1343(3).  Venue is proper in this district under 28 U.S.C. §1391(b) in that all claims arose in this district.

## PARTIES

Plaintiffs

10.      Plaintiff John Doe No. 1 is a Latino who has resided in the Village of Mamaroneck recurrently for four and a half years.

11.      Plaintiff John Doe No. 2 is a Latino who has resided in the Village of Mamaroneck recurrently for five years.

12.      Plaintiff John Doe No. 3 is a Latino who has resided in the Village of

3

Mamaroneck for two months.

13.    Plaintiff John Doe No. 4 is a Latino who has resided in the Village of Mamaroneck for five and a half years.

14.    Plaintiff John Doe No. 5 is a Latino who has resided in the Village of Mamaroneck for five years.

15.    Plaintiff John Doe No. 6 is a Latino who has resided recurrently in the Village of Mamaroneck for eight years.

16.    The names of Plaintiffs John Doe Nos. 1 through 6 are being withheld for fear of retaliation. If the Court deems it necessary, Plaintiffs' full names will be filed under seal with the clerk, after the entry of a protective order.

17.    Plaintiff National Day Laborers Organizing Network ("NDLON") is an unincorporated not-for-profit organization that provides advocacy by and on behalf of, and assistance to, day laborers across the United States.

Defendants

18.    Defendant Village of Mamaroneck is a New York municipal corporation.

19.    Defendant Philip Trifiletti is the Mayor of the Village of Mamaroneck. He is the Village Official charged with overall responsibility for implementing and administering the policies of the Village of Mamaroneck. He is sued in his official capacity.

20.    Defendant Edward Flynn is the Chief of the Village of Mamaroneck Police Department and is responsible for implementing and administering the policies of the

4

1009717

Police Department of the Village of Mamaroneck.  He is sued in his official capacity.

21.    During all times mentioned in this complaint, the Defendants were acting under color of law, that is, under color of the statutes, laws, charter, ordinances, rules, regulations, customs and usages of the State of New York, Westchester County, or the Village of Mamaroneck.

## STATEMENT OF FACTS

Background

22.    For the past several years, plaintiffs and other day laborers in Mamaroneck have been hired as independent contractors by homeowners, small businesses, and construction contractors on a temporary basis  to perform jobs such as gardening, landscaping, housework, and construction.   Since the employment of day laborers is informal, day laborers and contractors do not find each other through traditional means, like advertising.   Instead, day laborers announce their availability for work by the act of congregating in a public area, making themselves visible to potential employers, gesturing, or otherwise expressing their desire to work.

23.    Columbus Park (or the "Park") is a park located in the Village of Mamaroneck.  It is adjacent to the Mamaroneck train station.  The Park is an area located between Jefferson and Mamaroneck Avenues.   Van Ranst Street runs along the western boundary of the Park, and Station Plaza runs along the eastern boundary of the Park.  A true and correct copy of a map depicting the Columbus Park area is annexed hereto as Exhibit A.

24.    Day laborers have sought work in the vicinity of Columbus Park since the mid-1980s.  Since approximately 1991, day laborers have waited for employers on the

5

edge of the Park along Van Ranst Street.  In August 2004, the Village moved the official pick-up site from Van Ranst Place to an overflow parking lot for commuters' cars located along Jefferson Avenue near the corner of Van Ranst Place (the "Day Laborer Hiring Site" or the "Site").

25.    Prior to February 1, 2006, the Latino day laborers seeking work would gather at the Day Laborer Hiring Site in Columbus Park and wait until potential employers entered the Site to seek their services.  The day laborers then would speak to these potential employers about employment possibilities and negotiate an employment agreement.  Employers range from professional landscapers and contractors to individual homeowners seeking someone to do odd jobs.  Most employers arrive in the morning between the hours of 7 a.m. and 11 a.m..

26.    Virtually all of the laborers seeking employment at the Day Laborer Site are Latino and are Mamaroneck residents.

27.    Fifty to one hundred laborers have typically gathered at the Site on any given day.

28.    Upon information and belief, the operation of the Day Laborer Site did not interfere with traffic on Jefferson Avenue or Van Ranst Place or with other activities in the neighborhood.  Upon information and belief, there was not any increase in crime or other violations of law within the immediate vicinity of Columbus Park due to the Day Laborer Site.

29.    At various times, the representatives of the Village, including the mayor and the chief of police, participated on a task force to discuss ways to improve

6

conditions at the day laborer site in Columbus Park.  At certain task force meetings, Mayor

Trifiletti indicated that he was satisfied with how the Day Laborer Site was functioning.

January 23rd Resolution Closing Columbus Park to Day Laborers

       30.    In January 2006, new construction commenced for a luxury apartment

building, developed by Park View Condominiums, directly across the street from the Day

Laborer Site at the corner of Van Ranst Place and Sheldrake Place.  Upon information and

belief, prior to the commencement of construction, the developer wrote several letters to the

Village Trustees complaining about the presence of the Latino day laborers who gathered

near the building site.  In one letter an agent for the developer stated in all caps text

"OBVIOUSLY  WE  CANNOT  BUILD  A  LUXURY  CONDO  UNTIL  THE  DAY

LABORERS HAVE ANOTHER PLACE TO WAIT AROUND."

       31.    Upon information and belief, after the developer of this apartment

building again complained about the presence of Latino day laborers in Columbus Park,

Village officials decided to begin a campaign of harassment and intimidation against Latinos

and Latino day laborers seeking work in the Village of Mamaroneck.

       32.    On January 23, 2006, the Village Trustees passed the following

resolution:

> RESOLVED, that the day laborers' site at Columbus Park be closed
> as of February 1, 2006 to April 1, 2006, and will remain closed until
> further notice, based upon the response and participation of the
> Village of Mamaroneck's neighboring communities in opening up a
> day laborer hiring site.

       33.    During the consideration of the January 23rd Resolution, Village

Trustee Joseph Angilletta referred to the day laborers, many of whom are Mamaroneck

1009717

residents, as "locusts" who contribute nothing to the local community.

34.     Upon information and belief, shortly after the January 23 Resolution was passed, Village Trustee Thomas Murphy stated that the Village Trustees had voted to close Columbus Park because the developer of the condominium complex indicated that the presence of the Latino day laborers would make it difficult for them to sell their apartments.

35.     Upon information and belief, shortly after the January 23 Resolution was passed, Village Manager Leonard Verrastro stated "You can't stop people from standing around, and you can't tell people where to stand, but [Columbus Park] will no longer be the village's official site for day laborers."

36.     Upon information and belief, shortly after the January 23 Resolution was passed, Mayor Trifiletti noted that the day laborers could not be prevented from congregating in Columbus Park stating "You can't stop someone from standing there, so they will not be bothered in any way."

37.     Despite the Mayor's and Village Manager's comments that people cannot be prevented from standing in the Park, the Village and the Village police took action to remove the day laborers from the Park and to prevent them from congregating in any central place to seek employment.

38.     Initially, after the effective closing date on February 1, 2006, the day laborers moved to Van Ranst Place to look for work, and their activities were monitored by two police officers and patrol cars with flashing lights, one at the corner of Van Ranst and Mamaroneck Avenue, and another at the corner of Van Ranst Place and Sheldrake Place.

39.     At various times in the weeks that followed, the police presence

8

increased to four police officers on Van Ranst Place.  During this time, contractors would slow down appearing to look for day laborers, but after seeing the police would immediately drive away.  At times, police officers would tell the day laborers to "keep moving" (*i.e.*, not stand in one place on Van Ranst Place).

40.     Beginning in March 2006, police officers stationed on Van Ranst Place began to hand out flyers (the "Flyer") drafted in Spanish by the "Village of Mamaroneck" (signing it the "Friendly Village") to day laborers who were in the vicinity of Columbus Park.

41.     The Village also posted signs stating "This is no longer a Day Laborer Hiring Site" ("No Day Laborer Signs") in the following three entry points to Columbus Park: (i) the former Day Laborer Hiring Site across the street from the corner of Sheldrake Place and Van Ranst Place; (ii) the corner of Mamaroneck Avenue and Van Ranst Place; and (iii) the corner of Jefferson Avenue and Van Ranst Place.

Amendments to Traffic Ordinances

42.     On March 13, 2006, the Village amended its traffic code to (i) designate Van Ranst Place between Mamaroneck and Jefferson Avenues as a "No Standing" zone, and (ii) to prohibit all trucks except for local delivery from Sheldrake Place, a street that intersects with Van Ranst Place near the center of Columbus Park.  In approving the amendments, the trustees stated that the amendments supported the interest of pedestrian safety (the "March 13th Traffic Amendments").

43.     Village Trustee William J. Paonessa pointed out that a "no truck" prohibition was already in effect for Van Ranst Place.  Upon information and belief, this

9

1009717

prohibition had not previously been enforced.

44.    Upon information and belief, on March 4, 2004, the Village trustees voted to change the zoning of the Park View Condominium construction site located at the corner of Van Ranst Place and Sheldrake Place to allow additional units to be built.  Upon information and belief, to facilitate the rezoning, the Village trustees designated Van Ranst Place as a "wide avenue" thoroughfare, similar to Mamaroneck Avenue and Boston Post Road, the two primary thoroughfares in the Village.

45.    Around this time, the Village posted signs indicating that trucks were not permitted on Van Ranst Place, except for local deliveries.  Upon information and belief, the prohibition on trucks is enforced against potential employers of day laborers, but is not enforced against trucks involved in the luxury apartment construction project.

Police Follow Day Laborers to Mamaroneck Avenue

46.    Shortly after the No Day Laborer Signs were posted in Columbus Park and on Van Ranst Place in March 2006, the day laborers moved to Mamaroneck Avenue to seek work.  Since that time, on any given weekday or Saturday morning, between thirty and forty day laborers gather in groups of about ten at approximately four different points along Mamaroneck Avenue.

47.    Currently, between three and four police officers monitor the activities of the day laborers, and set up document checkpoints for trucks that pass through the vicinity along Mamaroneck Avenue.  The police frequently pull over trucks that travel within the vicinity of the day laborers, and inspect the trucks and the drivers' licenses and other credentials.   The police implemented these checkpoints after the January 23rd

10

Resolution purportedly went into effect on February 1, 2006.

48.     If a group of workers choose to change locations, a police officer follows the group.  When a group stops at a particular location, the officer parks his patrol car with lights flashing, exits the car, and stands adjacent to the group of men with arms folded across his chest.

49.     If a group of day laborers decides to stand on the corner of Mamaroneck Avenue and Sheldrake Place outside of a delicatessen, a police officer then parks his patrol car alongside the group, and a second police officer parks across the street. Each officer blocks off a lane of traffic in each direction with orange traffic cones for the purpose of setting a document checkpoint for trucks driving along Mamaroneck Avenue. This practice has the effect of reducing the traffic lanes on Mamaroneck Avenue from four lanes to two lanes, and delaying all traffic in both directions.  If the day laborers leave that location to stand somewhere else, the police abandon the checkpoint and follow the men to the new location.

50.     Since the January 23rd Resolution took effect, police officers have routinely threatened to issue $150 citations to the day laborers for unspecified offenses if they did not "keep moving."  Police officers have told the day laborers that they are loitering, even though the Village has not enacted an ordinance prohibiting loitering.

March 27th Resolution Rejecting Alternative Day Laborer Site

51.     In March 2006, Westchester County Executive Andrew Spano offered to the Village an alternative site for the day laborers to gather, namely a water treatment plant owned by the County, located on West Boston Post Road near the corner of Mt.

11

Pleasant Street in the Village (the "Water Treatment Plant").

52.    At the Village Trustee meeting on March 27, 2006, the Village Trustees voted to reject the Water Treatment Plant as an alternative day laborer hiring site.

53.    During the March 27 meeting, Edward Ryan, Village Commissioner of Traffic, indicated his hostility to Latino day laborers, when he stated "They have to come up with another solution. They want to bus 'em, bus 'em. Let them go in the military [chuckles]. Let them earn their citizenship that way. Whatever. I don't believe they belong hanging out on Boston Post Road."

54.    The above actions taken by the Village and the police have intimidated the day laborers and have also intimidated potential employers such that they are afraid to enter Columbus Park or the nearby vicinity along Mamaroneck Avenue to express their desire to hire day laborers.

55.    Despite the Mayor's and Village Manager's admissions that the day laborers have a right to stand in Columbus Park and the Mayor's recognition that they have a right to gather, the Mamaroneck police have engaged in an organized strategy to hamper Plaintiffs' efforts to communicate with potential employers by trailing groups of day laborers, setting up checkpoints, and persistently threatening individuals with citations.

56.    As a result, Plaintiffs' ability to seek and obtain employment in Columbus Park, along Mamaroneck Avenue and elsewhere in the Village has been substantially impaired and they have suffered economic, emotional and psychological harm.

57.    Upon information and belief, in late March 2006, Village Trustee Thomas Murphy stated:

1009717

> They [the police] chased the guys out of the park, and now they are up
> and down Mamaroneck Avenue.  The police have set up checkpoints
> at either end of Mamaroneck Avenue.  There are four to six
> policeman there every morning, stopping every van and truck that
> goes through.  It brings the traffic down to one lane in the morning.

Effect on Plaintiffs

John Doe No. 1

58.     Plaintiff John Doe No. 1 has regularly sought employment at the Day Laborer Hiring Site in Columbus Park, as well as along Mamaroneck Avenue; however, as a result of defendants' actions of harassment, intimidation and discrimination, the closure of Columbus Park, the extensive police patrols, and the threat of receiving citations, his ability to seek employment in the Village has been substantially impaired.

59.     On one occasion in March 2006, John Doe No. 1 was held in a contractor's truck by the police for close to two hours, but was never informed why he was being detained.

60.     Plaintiff John Doe No. 1 lives in fear of being detained again or arrested.  As a result of being singled out as Latino for disparate and unfair treatment by defendants, he has suffered emotional and psychological harm.

John Doe. No. 2.

61.     Plaintiff John Doe No. 2 has regularly sought employment at the Day Laborer Hiring Site at Columbus Park as well as along Mamaroneck Avenue; however, due to the closure of Columbus Park, and the police surveillance and checkpoints along Mamaroneck Avenue in the mornings, his ability to seek employment in the Village has been substantially impaired.

13

1009717

62.     On one occasion, a police officer asked John Doe. No. 2 "Why don't you go back to your own country?"

63.     As a result of being singled out as Latino for disparate and unfair treatment by defendants, Plaintiff John Doe No. 2 has suffered emotional and psychological harm.

John Doe No. 3

64.     Plaintiff John Doe No. 3 has regularly sought employment at the Day Laborer Hiring Site at Columbus Park as well as along Mamaroneck Avenue; however, due to the closure of Columbus Park, and the police surveillance and checkpoints along Mamaroneck Avenue in the mornings, his ability to seek employment in the Village has been substantially impaired.

65.     As a result of being singled out as Latino for disparate and unfair treatment by defendants, Plaintiff John Doe. No. 3 has suffered emotional and psychological harm.

John Doe No. 4

66.     Plaintiff John Doe No. 4 has regularly sought employment at the Day Laborer Hiring Site at Columbus Park as well as along Mamaroneck Avenue; however, due to the closure of Columbus Park, and the police surveillance and checkpoints along Mamaroneck Avenue in the mornings, his ability to seek employment in the Village has been substantially impaired.

67.     The police have told John Doe No. 4 that he is not allowed to stand in one place on the sidewalk along Mamaroneck Avenue or they will issue him a ticket.

1009717

68.     As a result of being singled out as Latino for disparate and unfair treatment by defendants, Plaintiff John Doe. No. 4 has suffered emotional and psychological harm.

John Doe No. 5

69.     Plaintiff John Doe No. 5 has regularly sought employment at the Day Laborer Hiring Site at Columbus Park as well as along Mamaroneck Avenue; however, due to the closure of Columbus Park, and the police surveillance and checkpoints along Mamaroneck Avenue in the mornings, his ability to seek employment in the Village has been substantially impaired.

70.     The police have told John Doe. No. 5 that he will receive a $150 ticket if he stands in Columbus Park.  The police have also said that he is not allowed to stand in one place on the sidewalk along Mamaroneck Avenue or they will issue him a ticket.

71.     Plaintiff John Doe No. 5 lives in fear of being arrested and feels he cannot walk freely in his own neighborhood.  As a result of being singled out as Latino for disparate and unfair treatment by defendants, he has suffered emotional and psychological harm.

John Doe No. 6

72.     Plaintiff John Doe No. 6 has regularly sought employment at the Day Laborer Hiring Site at Columbus Park as well as along Mamaroneck Avenue; however, due to the closure of Columbus Park, and the police surveillance and checkpoints along Mamaroneck Avenue in the mornings, his ability to seek employment in the Village has

15

been substantially impaired.

73.    The police have told John Doe No. 6 that he is not permitted to stand still along Mamaroneck Avenue and that he must keep moving.  On one occasion, after John Doe No. 6 sat down on a bench, a police officer ordered him to stand up and move away.

74.    Plaintiff John Doe No. 6 feels he cannot walk freely in his own neighborhood.  As a result of being singled out as Latino for disparate and unfair treatment by defendants, he has suffered emotional and psychological harm.

75.    Plaintiffs have no adequate remedy at law for the above recurring violations of their First Amendment rights to express their availability for employment opportunities, and their Fourteenth Amendment rights to equal protection of the laws.

National Day Laborers Organizing Network

76.    NDLON has expended substantial resources to respond to the escalation of police enforcement against day laborers in Mamaroneck.  NDLON serves and includes day laborers who desire to make their availability for work known in Mamaroneck and who have been adversely affected by municipal government action.  On numerous occasions, NDLON staff members have met with local day laborers, agencies, and supporters in Mamaroneck to assist them in responding to the mistreatment directed at the day laborers by the police and local government.

77.    Defendants' conduct is designed to eliminate Latinos from seeking work in the Village, and limit the number of Latinos who gather on the sidewalks and in the parks in the Village. Defendants' conduct has been intentional, willful and taken in reckless disregard of the rights of Latino persons represented by the plaintiffs herein, many of whom

16

1009717

are Village residents.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### Violation of Plaintiffs' First Amendment Rights

78. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 77 as if fully set forth herein.

79. By threatening and acting to prevent day laborers, including plaintiffs, from making their availability for employment known while standing in the Day Laborer Hiring Site in Columbus Park and in other areas (such as sidewalks) adjacent to Village streets, such as Mamaroneck Avenue, and by threatening them with tickets for non-compliance with police directives not to gather and communicate with employers in those areas, Defendants have violated Plaintiffs' rights to free speech under the First Amendment to the United States Constitution.

80. In preventing Plaintiffs from gathering in Columbus Park, on the sidewalks along Mamaroneck Avenue as well as in other public spaces in the Village, Defendants have infringed on Plaintiffs' right to freedom of association.

### SECOND CLAIM FOR RELIEF
#### Violation of Latino Day Laborers' Equal Protection Rights

81. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 77 as if fully set forth herein.

82. The Village and the Police Department have engaged in a deliberate policy to target Latinos in Columbus Park, on the sidewalks along Mamaroneck Avenue, and in otherwise publicly accessible areas of the Village based on their national origin and

17

1009717

ethnicity.

83.     Police officers, acting on behalf of and at the direction of Defendants, have engaged in a continuing pattern and practice of intentional national origin discrimination and discrimination based on ethnicity in carrying out their official duties, by subjecting Latino pedestrians, but not non-Latino pedestrians, to a pattern of unlawful surveillance and threat of citations.

84.     Further, the Flyer, which was published only in Spanish, demonstrates The Village's and Police Department's intention to selectively target Latinos, and not non-Latinos.

85.     Upon information and belief, Defendants are aware that the policies and actions detailed above would impact only Latinos.  In spite of their knowledge of the impact on Latinos, Defendants implemented those policies and undertook such activities.

86.     As a direct and proximate result of defendants' efforts to harass, intimidate and discriminate against persons of Latino descent on the streets, sidewalks and publicly accessible areas in the Village, plaintiffs and the class they represent have been deprived of their right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

REQUEST FOR RELIEF

WHEREFORE, the Plaintiffs and the classes they represent request the following relief, jointly and severally, against all Defendants:

1.     Preliminary and permanent injunctive relief for plaintiffs:

a.     Enjoining Defendants' unconstitutional policy, practice and

18

custom of harassing, unreasonably burdening, or otherwise interfering with Plaintiffs' and other day laborers' First Amendment Rights to speak about employment opportunities and to associate at the Day Laborer Site in Columbus Park or elsewhere in the Village of Mamaroneck;

       b.     Enjoining Defendants from prohibiting Plaintiffs and other day laborers from gathering in the Day Laborer Site in Columbus Park to speak about employment opportunities (i) permanently or (ii) until the Defendants establish an acceptable alternative site.

       c.     Enjoining Defendants from selectively enforcing Village traffic ordinances to the extent that they prevent Plaintiffs and other day laborers from discussing employment opportunities with potential employers in Columbus Park or elsewhere in the Village of Mamaroneck;

       d.     Enjoining defendants' unconstitutional policy, practice and custom of harassing, selectively enforcing Village ordinances against, or otherwise discriminating against plaintiffs on the basis of national origin, race or color.

       2.     Reasonable attorney fees and costs pursuant to 42 U.S.C. §1983 and 42 U.S.C. §3613 (c) (2); and

1009717

3.     Such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Dated: New York, New York
      April 27, 2006

                    Respectfully submitted,

                    PUERTO RICAN LEGAL DEFENSE
                      AND EDUCATION FUND
                    Foster Maer (FM -0680), of Counsel
                    Alan Levine (AL-5297), of Counsel
                    Sandra DelValle (SD-1700), of Counsel
                    Alan Levine, of Counsel
                    99 Hudson Street, 14h Floor
                    New York, New York 10013
                    Tel. (212) 219-3360

                    DEWEY BALLANTINE LLP
                    Janis M. Meyer (JM-3194)
                    Candace D. Banks (CD-5211)
                    Lauren C. Petersen (LP-6223)
                    1301 Avenue of the Americas
                    New York, New York 10019-6092
                    212 259-8000

                    By: /s/  _Sandra DelValle_
                      Attorneys for Plaintiffs

1009717